# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

MARY WEBB, et al.,

           Plaintiff,

v.                                        CIVIL ACTION NO.  5:09-cv-01253

RALEIGH COUNTY SHERIFF'S
DEPARTMENT, et al.,

           Defendants.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) [Docket 6]. The Court has also reviewed Plaintiff's memorandum of law in opposition [Docket 9], Defendants' reply [Docket 12] and the Amended Complaint [Docket 1-4]. After careful consideration, the Court denies Defendants' motion in part, and grants Defendants' motion in part.

### I. BACKGROUND

July 4, 2006, was both Independence Day and the birthday of Mr. Robert A. Webb ("the Decedent"). On that evening, Plaintiff alleges that Defendant Raleigh County Sheriff's Department ("the Department") received a nuisance complaint on its non-emergency phone line that the Decedent was loudly playing music and discharging a firearm. Plaintiff claims that Decedent had not been the only resident of his neighborhood who had been discharging a firearm in celebration that evening and also claims that Decedent had not discharged his firearm in a manner that endangered himself or others.

Plaintiff claims that Defendants Deputy Greg S. Kade ("Kade") and Deputy John E. Hajash ("Hajash") arrived at the Webb residence at approximately one o'clock a.m., purportedly more than thirty (30) minutes after Decedent's last firearm discharge. She states that Kade and Hajash observed Decedent engaged in peaceful conduct and that the two Deputies did not hear any firearm discharges. Plaintiff alleges that Kade and Hajash approached the Webb residence without use of the lights and sirens available to them on their police car, parked and exited their police car at a location not visible to Decedent, and approached the Webb residence on foot while using cover to conceal their presence. Plaintiff claims that despite the fact that this was a non-emergency nuisance call, Kade chose to approach the scene with an assault shotgun from his police car instead of his service handgun, and that both Kade and Hajash chose to ignore the non-lethal weapons which were in their police car and which had been provided to them by the Department. According to Plaintiff, Kade and Hajash observed Decedent from a concealed vantage point and waited there until Decedent turned away from them, at which time they ran towards Decedent in order to close the distance between them.

According to Plaintiff, Kade and Hajash shot Decedent in the driveway of his home, and failed to identify themselves as law enforcement officers prior to opening fire. She further states that Decedent was initially hit in the head and knocked to the ground by a shot fired from a shotgun, and then, while lying on the ground, was shot again by a handgun fired by one of the deputies. When emergency medical personnel arrived at the scene, Plaintiff alleges that the medics were denied immediate access to Decedent and were instructed not to touch him until personnel from the Department were finished taking photographs.

Plaintiff also alleges that Decedent died as a direct and proximate result of being shot by Kade and Hajash. Following the death of Decedent, Plaintiff alleges that the Department and other agents of Defendant Raleigh County Commission ("the Commission") failed to take steps to conduct a fair, reasonable, and unbiased investigation into the shooting of Decedent. She also claims that the Department, Defendant Sheriff Danny Moore ("Moore"), Defendant Chief Deputy Steve Tanner ("Tanner"), and other agents of the Commission engaged in acts and words of extreme cruelty towards Plaintiff. She claims that the Department, Moore, and Tanner refused to provide any grief counseling to her or her family "in spite of keeping them secluded inside their own home for hours while [Decedent's] body was lying just outside on his own driveway." (Docket 11, ex. 13 at 5).

Further, Plaintiff alleges that Moore and agents and employees of the Department and the Commission, including Kade and Hajash, made statements about the circumstances of Decedent's death that were false and/or were made with reckless disregard for the truth. Such statements allegedly caused Plaintiff "and others who knew and loved [Decedent] humiliation and severe emotional distress. *Id.* Among the false statements, according to Plaintiff, is one which indicates that the Decedent attempted to shoot Kade and Hajash without justification. Plaintiff claims that the Department, the Commission, Moore, and Tanner "engaged in a hasty and inadequate investigation designed solely to absolve [Kade and Hajash] from any liability and to taint [Decedent's] name in the public forum," *id.*, and that they engaged in conduct intended solely to pressure and control Kade and Hajash following the shooting of Decedent.

Plaintiff makes the following claims against Defendants in her Amended Complaint: wrongful death against Kade, Hajash, and, vicariously, against the Department and the Commission (Count I); suffering prior to death against Kade, Hajash, and, vicariously, against the Department

and the Commission (Count II); intentional infliction of emotional distress against the Department, the Commission, Kade, and Hajash (Count III); negligent hiring, training, and supervision against Moore, Tanner, the Department, and the Commission (Count IV); negligence against all Defendants (Count V); the tort of outrage against all Defendants (Count VI); punitive damages against all Defendants (Count VII); strict liability against the Department (Count VIII); civil conspiracy against all Defendants (Count IX); spoilation of evidence against all Defendants (Count X); attorney's fees (Count XII) and civil rights violations against Kade and Hajash (Count XIII). She also seeks a writ of mandamus against all Defendants (Count XI).

## II. ARGUMENT

The Department, the Commission, Moore, Tanner, and Kade[1] argue that this civil action should be dismissed under Fed. R. Civ. P. 12(b)(6).

*A. Immunity*

*1. West Virginia Law*

First, the Department and the Commission argue that Plaintiff's claims against them should be dismissed because West Virginia Code Section 7-14A-4 specifically provides that neither entity can be held liable for the actions of a deputy sheriff. According to Defendants, that provision gives the Commission unequivocal immunity, and gives the Department and Moore immunity unless Kade or Hajash acted in the presence and under the direct supervision of Moore.

Plaintiff, in her opposition to Defendant's motion to dismiss, disagrees. She argues that West Virginia Code Section 7-14A-4 does not preclude the Department from liability, as its text only

---

[1] Hajash, who has separate counsel, is not a party to this motion to dismiss.

refers to a county's sheriff, not its sheriff's department. Plaintiff also argues that West Virginia Code Section 29-12A-4(c)(2), as a more recently enacted statute, pre-empts the "antiquated" Section 7-14A-4 with regard to the Commission's liability. According to Plaintiff, the former provision makes the Commission liable for the negligent acts of its deputies and, therefore, takes precedence over Section 7-14A-4. She also argues that the provision in Section 29-12A-5(a)(5)—which provides immunity for a political subdivision's "failure to provide, or the method of providing, police, law enforcement or fire protection"—is inapplicable to this case. Plaintiff concedes that Moore and Tanner cannot be personally liable for the negligence of Kade and Hajash. However, she points out that she has also set forth allegations against Moore and Tanner that are based upon theories of direct liability.

Defendants disagree with Plaintiff's contentions in their reply. They argue that Section 7-14A-4 and Section 29-12A-4(c)(2) are not in conflict. According to Defendants, the former addresses the specific liability of sheriffs and county commissions for the acts and omissions of deputy sheriffs, while the latter only addresses the broader liability of political subdivisions. Defendants also argue that the two statutes have different intentions. They claim that the West Virginia Governmental Tort Claims and Insurance Reform Act, West Virginia Code Section 29-12A-1 *et seq.*, was intended to regulate insurance premiums and to assist, but not require, political subdivisions' purchase of insurance, while Section 7-14A-3 mandates that county commissions procure liability insurance for the act or omissions of their deputy sheriffs. Apparently, then, Defendants make the somewhat conflicting argument that Section 7-14A-3 requires county commissions to buy insurance for the act or omissions of their deputy sheriffs, but that Section 7-14A-4 precludes county commissions from being liable for such acts and omissions. Defendants

5

also make the alternative argument that, even if there is a conflict between the two provisions, Section 7-14A-4 should be given effect over Section 29-12A-4(c)(2). According to Defendants, because the former statute specifically deals with the liability of sheriffs and county commissions for the act or omissions of their deputy sheriffs, it is not nullified by the latter statute. Defendants also argue that while the text of Section 7-14A-4 does not contain the term "sheriff's department," it implicitly includes sheriff's departments as the department is an extension of the individual sheriff.

Finally, Defendants and Plaintiff also disagree as to whether the individual employees of the Department are protected from liability under West Virginia Code Section 29-12A-5(b). According to Defendants, Plaintiff has pled none of the exceptions from immunity in her complaint, while Plaintiff argues that she has satisfied an exception to immunity by pleading that the individual Defendants acted in a manner that was wanton and reckless.

*2. Suits Brought Under 42 U.S.C. § 1983*

Defendants further argue that any claims of civil rights violations against the Department and the Commission should be dismissed because such claims cannot be premised upon theories of agency or respondeat superior. Defendants argue that there is no basis for claims of violations of civil rights against the Department or the Commission because Plaintiff has made no allegations that the Commission or the Department adopted or instituted any policy or custom that led to the deprivation of civil rights for the Plaintiff or Decedent. Defendants also argue that any civil rights claims against Moore and Tanner should be dismissed because a theory of supervisory liability is not sufficient grounds to impose such liability against them. Rather, according to Defendants, a plaintiff seeking relief under 42 U.S.C. § 1983 is required to plead that a supervisor violated the Constitution through his or her own actions.

Plaintiff's arguments on this point are somewhat difficult to comprehend. While she argues in her opposition that the Department and the Commission can still be vicariously liable for civil rights violations if such violations were subsequently ratified by Moore and/or Tanner, *see City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (plurality opinion), she later states that she does not intend to assert civil rights claims against the Department and the Commission. She argues with respect to the individual officer Defendants that state law immunities are inapplicable and that state employees can be held personally liable under Section 1983 for their official conduct. Defendants reply that Plaintiff's civil rights count does not set forth a claim against either Moore or Tanner, and that there are no grounds to impute liability to either.

*B. Punitive Damages*

Defendants also argue that Count Seven (VII) of Plaintiff's Complaint, which requests punitive damages, should be dismissed. They argue that West Virginia Code Section 29-12A-7 precludes such damages from being awarded against them. Plaintiff, in opposition, argues that Section 29-12A-7 applies only to political subdivisions, and not the employees of a political subdivision. Defendants did not contest this argument in their reply.

*C. Official-Capacity Lawsuits*

Finally, Defendants argue that any claims against Kade, Moore, and Tanner in their official capacities should be dismissed as redundant. They state that official-capacity suits represent another way of pleading an action against an entity to which the official is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Therefore, they argue that as Plaintiff has also brought her suit against the Commission and the Department, the official-capacity claims are redundant. Plaintiff apparently does not contest this argument.

### III. APPLICABLE LAW

*A. Standard of Review*

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must assume "the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *Eastern Shore Markets, Inc. v. J.D. Associates Ltd. Partnership*, 213 F.3d 175, 180 (4th Cir. 2000). When considering a motion to dismiss, a court "accept[s] as true all well-plead allegations and view[s] the complaint in the light most favorable to the plaintiff." *Sec. of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir.2007); *see also Schatz v. Rosenberg*, 943 F.2d 485, 489 (4th Cir.1991). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." *Ashcroft v. Iqbal*, --- U.S. ---, ---, 129 S. Ct. 1937, 1950 (2009).

"To survive a Rule 12(b)(6) motion to dismiss, the facts alleged must be enough to raise a right to relief above the speculative level and must provide enough facts to state a claim to relief that is plausible on its face." *Robinson v. Am. Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)) (internal quotations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal citations omitted); *see also Iqbal*, --- U.S. ---, ---, 129 S. Ct. at 1949 ( stating that "the Rule does call for sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.").

*B. Immunity*

    *1. West Virginia Law*

"The general rule of construction in governmental tort legislation cases favors liability, not immunity. Unless the legislature has clearly provided for immunity under the circumstances, the general common-law goal of compensating injured parties for damages caused by negligent acts must prevail." Syllabus Point 2, *Marlin v. Bill Rich Const., Inc.*, 198 W. Va. 635 (1996).

The office of sheriff is a constitutional office that is filled by popular vote. West Virginia Constitution, Article IX, Section 1 ("The voters of each county shall elect a . . . sheriff"). Deputy sheriffs are defined as

> persons appointed by a sheriff as his deputies whose primary duties as such deputies are within the scope of active, general law enforcement and as such are authorized to carry deadly weapons, patrol the highways, perform police functions, make arrests or safeguard prisoners. This definition shall not be construed to include any person or persons whose sole duties shall be the service of civil process and subpoenas as provided in section fourteen, article one, chapter fifty of this code, but such exclusion shall not preclude the service of civil process or subpoenas by deputy sheriffs covered by the provisions of this article.

West Virginia Code Section 7-14-2. Deputies are appointed, promoted, reinstated, or reduced pursuant to the requirements of state law. *See, e.g.,* West Virginia Code Section 7-14-11. West Virginia Code Section 7-14A-4 provides that, *inter alia*, "no sheriff shall be held jointly or severally liable on his office bond or otherwise for any act or conduct of any deputies . . . except in cases where such deputy is acting in the presence of and under the direct, immediate, and personal supervision of such sheriff, nor shall the county commission of a county nor the county itself be held so liable."

West Virginia Code Section 29-12A-3(a) defines "employee" in relevant part as "an officer, agent, employee, or servant, whether compensated or not, whether full-time or not, who is

9

authorized to act and is acting within the scope of his or her employment for a political subdivision. Employee includes any elected or appointed official of a political subdivision." Section 29-12A-3(c) defines "political subdivision" as

> any county commission, municipality and county board of education; any separate corporation or instrumentality established by one or more counties or municipalities, as permitted by law; any instrumentality supported in most part by municipalities; any public body charged by law with the performance of a government function and whose jurisdiction is coextensive with one or more counties, cities or towns; a combined city-county health department created pursuant to article two, chapter sixteen of this code; public service districts; and other instrumentalities including, but not limited to, volunteer fire departments and emergency service organizations as recognized by an appropriate public body and authorized by law to perform a government function: Provided, That hospitals of a political subdivision and their employees are expressly excluded from the provisions of this article.

Moreover, West Virginia Code Section 29-12A-4(c)(2) states that "[p]olitical subdivisions are liable for injury, death, or loss to persons or property caused by the negligent performance of acts by their employees while acting within the scope of employment." Exceptions to this provision are given in Section 29-12A-5(a). Section 29-12A-5(a)(5) states that a political subdivision is immune from liability if a loss or claim results from ". . . the method of providing police, law enforcement or fire protection." The Supreme Court of Appeals of West Virginia held that this phrase refers to "the decision-making or the planning process in developing a governmental policy, including how that policy is to be performed." Syllabus Point 4, *Smith v. Burdette*, 211 W. Va. 477 (2002). However, it "does not provide immunity to a political subdivision for the negligent acts of the political subdivision's employee performing acts in furtherance of a method of providing police, law enforcement or fire protection." *Id.* at Syllabus Point 5.

Further, West Virginia Code Section 29-12A-5 states that an employee of a political subdivision is immune from liability unless "(1) [h]is or her acts or omissions were manifestly

outside the scope of employment or official responsibilities; (2) [h]is or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or (3) [l]iability is expressly imposed upon the employee by a provision of this code."

*2. Suits Brought Under 42 U.S.C. § 1983*

Title 42 U.S.C. § 1983 states that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

A local government cannot be sued under 42 U.S.C. § 1983 for injuries caused by its employees or agents unless it is the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy" that causes the injury. *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978).

Further, "[i]n a § 1983 suit or a *Bivens* action—where masters do not answer for the torts of their servants—the term "supervisory liability" is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Iqbal*, --- U.S. at ---, 129 S. Ct. at 1949. *See also Iqbal*, --- U.S. at ---, 129 S. Ct. at 1957 (Souter, J., dissenting) (stating that "[l]est there be any mistake, in these words the majority is not narrowing the scope of supervisory liability; it is eliminating *Bivens* supervisory liability entirely. The nature of a supervisory liability theory is that the supervisor may be liable, under certain conditions, for the wrongdoing of his subordinates, and it is this very principle that the majority rejects.")

*C. Punitive Damages*

West Virginia Code Section 29-12A-7 provides, in relevant part, that

in an action against a political subdivision or its employee to recover damages for injury, death, or loss to persons or property for injury, death, or loss to persons or property caused by an act or omission of such political subdivision or employee:

(a) . . . an award of punitive or exemplary damages against such political subdivision is prohibited.

*D. Official-Capacity Lawsuits*

"Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985) (internal citations and quotations omitted).

*IV. DISCUSSION*

*A. Immunity*

*1. West Virginia Law*

As a preliminary matter, the Court finds that the Raleigh County Sheriff's Department is not an entity capable of being sued. While West Virginia law provides for the election of sheriffs and the appointment of sheriff's deputies, there is no organic authority in state law that creates a sheriff's

department or sheriff's office. This stands in contrast to entities such as volunteer fire departments[2] and emergency service organizations,[3] the existence of which is provided for by state law and both of which qualify as political subdivisions under Section 29-12A-3(c). Accordingly, all counts against the Raleigh County Sheriff's Department are, therefore, dismissed.

However, the Court denies the motion to dismiss insofar as it relates to the claims against the Commission for any negligent acts and omissions of Kade, Hajash, Moore, and Tanner. The Court finds that Section 29-12A-4(c)(2) conflicts with and supercedes Section 7-14A-4 with regard to such liability. The Court finds that the two statutes are in conflict as the former statute clearly states that political subdivisions, such as the Commission, can be liable for the negligence of their employees in certain circumstances, while the latter statute would provide immunity in circumstances such as those alleged in the instant case. Additionally, as an elected official of a political subdivision, the sheriff, Moore, is clearly contemplated in Section 29-12A-3 as an employee for whose negligence the Commission can be held liable under Section 29-12A-4(c)(2).

As the most recent of the two conflicting statutes, Section 29-12A-4(c)(2) takes precedence over Section 7-14A-4. The Court disagrees with Defendants' argument that, as a more specific statute, Section 7-14A-4 should be given effect over Section 29-12A-4(c)(2). The Governmental Tort Claims and Insurance Reform Act was broadly intended to, inter alia, "provide immunity to political subdivisions in *certain* instances." West Virginia Code Section 29-12A-1 (emphasis added). The Court also finds that Defendants' arguments as to the insurance portions of the two statutes are not germane to the Court's rulings and are without merit.

---

[2] See West Virginia Code 8-15-1 *et seq.*

[3] See West Virginia Code 7-15-1 *et seq.*

The applicability of Section 29-12A-4(c)(2) is also borne out by a review of applicable case law. This Court has found no precedent wherein a West Virginia court used Section 7-14A-4 to immunize a county commission for a deputy's actions. Rather, the Court's research reveals that the Supreme Court of Appeals of West Virginia has, instead, applied the West Virginia Governmental Tort Claims and Insurance Reform Act in determining whether county commissions are liable for the acts and omissions of sheriffs and sheriff's deputies. In *Holsten v. Massey*, 200 W. Va. 775, 789-91 (1997), a case with facts distinguishable from the instant case, the Court found that the County Commission of Boone County was not liable for the acts of a sheriff's deputy due to a failure to provide law enforcement. The *Holstein* court did not rely upon, or even mention, Section 7-14A-4 in holding that the Commission was immune. *See also Beckley v. Crabtree*, 189 W. Va. 94 (1994) (applying the Governmental Tort Claims and Insurance Reform Act in determining that the County Commission of Wayne County could be liable for injuries arising out of the negligence of the county sheriff, if said negligence occurred while he was performing duties within the scope of his employment as Sheriff of Wayne County.).

As noted earlier, "[t]he general rule of construction in governmental tort legislation cases favors liability, not immunity. Unless the legislature has clearly provided for immunity under the circumstances, the general common-law goal of compensating injured parties for damages caused by negligent acts must prevail." *Bill Rich Const., Inc.* at Syllabus Point 2. Accordingly, the Court finds that any ambiguities should be resolved in favor of the Governmental Tort Claims and Insurance Reform Act, and that the primacy of that statute over Section 7-14A-4 is consistent with the established public policy of West Virginia.

With the primacy of the Governmental Tort Claims and Insurance Reform Act now determined, the Court finds that the immunity (or exception to liability) provided for in Section 29-12A-5(a)(5) is not applicable. Plaintiff alleges, in part, that Kade, Hajash, Moore, and Tanner were negligent. Section 29-12A-5(a)(5) "does not provide immunity to a political subdivision for the negligent acts of the political subdivision's employee performing acts in furtherance of a method of providing police, law enforcement or fire protection." *Burdette* at Syllabus Point 5. Accordingly, the Commission may be liable for any negligence on the part of Kade, Hajash, Moore, and Tanner as alleged in Counts I, II[4], IV[5], V and VIII, as well as any direct negligence on its part as alleged in Counts IV and V.

The Court further finds that the exceptions to individual immunity that are provided for in West Virginia Code Section 29-12A-5 allow counts of Plaintiff's case against the individual officer Defendants to go forward. Plaintiff has alleged facts that, if taken as true, provide that certain acts or omissions of the individual officer Defendants were either manifestly outside the scope of employment or official responsibilities or were made with malicious purpose, in bad faith, or in a wanton or reckless manner. Counts I, II, III, IV, V, VI, VII, IX, X, and XIII against the respective individual officer Defendants, therefore, remain intact. Given the allegations of the Plaintiff's Amended Complaint and given the Court's required analysis of a motion to dismiss, dismissal is not appropriate.[6]

---

[4] To the extent that Count 1 attempts to allege constitutional rights violations against the Commission by virtue of acts committed by Kade and Hajash, it is dismissed against the Commission.

[5] To the extent that Count 2 attempts to allege constitutional rights violations against the Commission by virtue of acts committed by Kade and Hajash, it is dismissed against the Commission.

[6] As Defendants made no arguments regarding Counts 11 and 12, the Court leaves them in place
(continued...)

*2. Suits Brought Under 42 U.S.C. § 1983*

Although Defendants have argued about the viability of Section 1983 claims against the Commission, the Department, Moore, and Tanner, a reading of Plaintiff's Amended Complaint reveals that only Kade and Hajash are named in Count XIII. No such claim is made against the remaining Defendants in that count of the Amended Complaint and the Court, in footnotes four (4) and five (5) of this opinion, has previously addressed any attempt to make such a claim against the Commission in Counts I and II.

*B. Punitive Damages and Official-Capacity Lawsuits*

Plaintiff apparently does not contest Defendants' arguments that official capacity suits against the individual officer Defendants are redundant, and Defendants apparently do not contest that West Virginia Code Section 29-12A-7(a) only precludes punitive damages against political subdivisions as opposed to the subdivision's employees. Accordingly, the Court finds it unnecessary to address these issues.

*V. CONCLUSION*

For the reasons stated above, the Court **ORDERS** Defendants' Motion to Dismiss Pursuant to Rule 12(b)(6) [Docket 6] **DENIED** in part, and **GRANTED** in part.

---

[6](...continued)
as to both the Commission and the individual officer Defendants.

16

      The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

      ENTER:    September 16, 2010

_____
IRENE C. BERGER, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA